IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MARY HUTCHERSON,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:13-cv-01512-JEH

**Order and Opinion**

    Now before the Court is the Plaintiff Mary Hutcherson's Motion for Summary Judgment (Doc. 19), the Commissioner's Motion for Summary Affirmance (Doc. 25), and the Plaintiff's Reply (Doc. 28). For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Affirmance.

I

    On February 17, 2010, Hutcherson filed an application for Supplemental Security Income (SSI) alleging disability beginning on June 15, 2007. Her claim for SSI was denied initially on June 30, 2010, and was denied upon reconsideration on September 22, 2010. On October 20, 2010, Hutcherson filed a request for hearing concerning her application for Social Security benefits. A hearing was held before the Honorable Diane Raese Flebbe (ALJ) on May 31, 2012, and at that time Hutcherson was represented by an attorney. Following the hearing, Hutcherson's claim was denied on June 7, 2012. Her request for review by the Appeals Council was denied on July 24, 2013, making the ALJ's Decision

the final decision of the Commissioner. Hutcherson filed the instant civil action seeking review of the ALJ's Decision on October 28, 2013.

II

At the time she applied for SSI, Hutcherson was 43 years old living in Thomasboro, Illinois and she had one teenage daughter. A medical record dated shortly before she applied for SSI indicated that Hutcherson was living in her home in February 2010 with her daughter and sister and brother-in-law. On the various SSA forms she submitted, she indicated that bipolar disorder, depression, anxiety disorder, and bad headaches caused by a brain tumor all limited her ability to work. She had a high school education and had not worked since June 2007.

At the hearing before the ALJ on May 31, 2012, Hutcherson testified that she believed her worst problem that affected her ability to work was the fact that she became excited too easily and became anxious too easily to where should could not get her job done. She explained that she lost her last job because she could not keep up with her duties, became frustrated, and then walked off the job.

Hutcherson also testified that she was living with her sister and brother-in-law, their son, and her boyfriend. She testified that she took care of the household chores with her sister, but she sometimes would not do chores when she was not having a good day. Hutcherson explained that when she was not having a good day, she was tired and really nervous. She testified that she had been treating with psychiatrist Dr. Feiteng Su, M.D. for three years and that the medications he had her on helped her for the most part. Hutcherson testified to still experiencing anxiety and panic attacks once every six months that usually lasted approximately a half hour and would make her shut down. She also testified that she did not like being around a lot of people and no longer drove

because those things made her nervous. She said that her depression caused her to cry until she made herself sick about once a week, and that her crying spells were prompted by her becoming upset about something. She testified that her prescription medications did not bother her. She later testified that her medications made her tired.

Hutcherson also stated that she experienced migraine headaches for six years and had them weekly for one to two days at a time. She testified that her migraines had become worse and she had visited the emergency room on occasion due to the migraines. However, she then testified that her treating physician had her on medication for the migraines and they were "greatly improved" so that she no longer experienced those migraines. AR 52. She stated, "It's pretty much changed [since being put on medicine] because I don't have one. If I do have a headache, I can take my medicine and it goes away." AR 52. Hutcherson testified that before she was on medication, she had migraines once or twice a week.

Hutcherson also testified to having asthma for which she used an inhaler twice a day and a nebulizer twice a day. She explained that her treating doctor for the past three years, Bruce W. Kaplan, M.D., suggested she use the nebulizer. She testified that pollen, mowing the yard, and pet hair were triggers for her asthma.

### III

In her Decision, the ALJ determined that Hutcherson had the severe impairments of obesity, asthma, migraine headaches, bipolar mood disorder, and anxiety-related disorder. The ALJ crafted the following Residual Functional Capacity for Hutcherson:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

> perform medium work as defined in 20 CFR 416.967(c) but is limited to work involving no concentrated exposure to fumes, odors, dust, gases or other environmental irritants and limited to unskilled work involving no production pace demands and work involving only occasional interaction with co-workers, supervisors or the general public.

AR 21. In reaching that finding, the ALJ recounted Hutcherson's testimony at the hearing regarding her mental and physical conditions. The ALJ recited the results of Hutcherson's mental status examinations in November 2007 and July 2008, noting both Hutcherson's own reports and the diagnoses made. The ALJ also discussed the results of a July 2008 State Agency mental evaluation where Hutcherson was assessed with mild limitations in activities of daily living and maintaining concentration, persistence, or pace and moderate limitations in social functioning.

The ALJ detailed Hutcherson's treating doctors' notes as well. The ALJ discussed Dr. Martin Repetto, M.D.'s notes regarding Hutcherson's mental health dated between November 2008 and June 2009, Dr. Su's notes regarding her mental health dated between February 2010 and January 2012, Dr. Kaplan's notes regarding her physical health dated between April 2010 and September 2011, and Dr. Rong Chen, M.D.'s notes regarding her migraines dated January 2012. With regard to Dr. Su's notes, the ALJ went on at length about the information gathered at many of Hutcherson's appointments with Dr. Su. That information included Hutcherson's subjective reports, her diagnoses, her GAF score[1] of 50 in February 2010, her medications, her compliance with medications, and her medication changes. The ALJ also indicated where Dr. Su noted in

---

[1] GAF is an abbreviation for the Global Assessment of Functioning scale which is "a rating of psychiatric status from 1 (lowest level of functioning) to 100 (highest level), assessing psychological, social, and occupational functioning[.]" DORLAND'S MEDICAL DICTIONARY, available at http://dorlands.com/index.jsp.

August 2011 that Hutcherson had lost her medical card. The ALJ made reference to an August 22, 2011 note by Dr. Su which indicated that Hutcherson had been very erratic in taking different medications.

In her discussion of the medical records, the ALJ noted the various other ailments that cropped up for Hutcherson during the time under review. The ALJ noted how Hutcherson sought treatment for chest pain, shortness of breath, wheezing, and the occasional headache. The ALJ also addressed Hutcherson's evaluations and testing undertaken due to her headache complaints. A CT of her head in June 2010 showed no acute intracranial abnormality and a slightly hyper dense nodule along the superior aspect of the sella turcica.[2] A brain MRI done in July 2010 revealed a small lesion above Hutcherson's pituitary gland which was suspicious for cleft cyst.[3] She saw Dr. Chen in January 2012 for a migraine, she reported increased headache, and she was started on Gabapentin.

Dr. Su's Medical Source Statement (MSS) dated January 6, 2011, assessed Hutcherson with marked impairments in attention and concentration and social functioning, and assessed her as easily distracted and unable to stay focused. The ALJ gave Dr. Su's MSS "little weight" because "it [was] not supported by the objective record or by Dr. Su's own treatment notes . . . . " AR 25.

The ALJ discussed a State Agency mental evaluation dated June 28, 2010 and affirmed on September 17, 2010. The Mental Residual Functional Capacity Assessment (MRFCA) done by Dr. Leslie Fyans, Ph.D., provided that Hutcherson's mental status was within normative limits and she was able to understand and recall all but complex or detailed instructions. AR 579. The

---

[2] Sella turcica is "a transverse depression crossing the midline on the superior surface of the body of the sphenoid bone, and containing the hypophysis." DORLAND'S MEDICAL DICTIONARY, available at http://dorlands.com/index.jsp.
[3] A branchial cleft cyst is "a cyst arising in the lateral aspect of the neck, from epithelial remnants of a branchial cleft (pharyngeal groove), usually between the second and third pharyngeal arches." DORLAND'S MEDICAL DICTIONARY, available at http://dorlands.com/index.jsp.

5

MRFCA also provided that Hutcherson's mood disorder suggested a socially restricted setting with a moderate limit of social expectations, and she retained the psychological capability to do one and two step unskilled tasks. AR 579. Dr. Fyans checked that Hutcherson was either not significantly limited or moderately limited in the various categories. Jerrold Heinrich, Ph.D., affirmed the MRFCA on September 17, 2010.

Her discussion of the record evidence relevant to the RFC finding concluded with the ALJ summarizing her finding as to Hutcherson's credibility. The ALJ stated, "In short, the claimant is found less than fully credible given her reported good response to various treatments, her lack of compliance, inconsistencies with respect to her subjective complaints as compared to her actual functioning and objective findings all noted above." AR 29. The ALJ ultimately found that Hutcherson had not been under a disability since February 17, 2010.

## IV

Hutcherson argues that the ALJ erred: 1) in discounting the opinion of a treating physician; 2) in failing to build a logical bridge from the evidence to her conclusions on the opinions of record; 3) in failing to consider Hutcherson's "other sources;" and 4) in making her credibility determination.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the

ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986)[4]. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

---

[4] Hutcherson only applied for SSI. As Hutcherson points out in her opening brief, the relevant Disability Insurance Benefits (DIB) and SSI regulations are virtually identical, and thus, citations in this Order and Opinion will be made to either the DIB regulations or parallel SSI regulations unless only an SSI regulation exists.

    3)      suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

    4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

    5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

    The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

    In the instant case, Hutcherson claims error on the ALJ's part at Step Four.

### A

    Hutcherson argues that the ALJ erred when she failed to give controlling weight to treating psychiatrist Dr. Su's opinion and when she failed to build a logical bridge from the evidence to her conclusion on the State Agency medical consultative opinions. Hutcherson specifically argues that with regard to the ALJ's assignment of little weight to Dr. Su's opinion, the medical evidence supports his opinion as he never indicated her mental health was "stable," the evidence shows ongoing changes to dosage and medication combinations to achieve effectiveness, the evidence includes her complaints of adverse side effects from medications, and the ALJ does not actually cite to any medical

evidence, opinion, or testimony that is contrary to Dr. Su's opinion. With regard to the State Agency opinions of record, Hutcherson faults the ALJ for not making it clear in the Decision the weight that the ALJ assigned the State Agency consultants' opinions and for not pointing to the particular medical evidence that is inconsistent with Hutcherson's allegations. In response to Hutcherson's arguments, the Commissioner highlights those parts of the ALJ's Decision that, according to the Commissioner, show that the ALJ properly considered the record evidence to conclude that Dr. Su's opinion was entitled to little weight. The Commissioner also argues that the ALJ's RFC finding made clear that she gave the State Agency consultants' opinions significant weight because the ALJ accommodated Hutcherson's limitations in her RFC.

1

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. §416.927(c)(3). If the ALJ does not give a treating physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

In his Medical Source Statement (MSS), Dr. Su opined that Hutcherson had moderate to marked work related limitations related to her psychiatric state. In her Decision, the ALJ explained that only little weight was given to Dr. Su's

opinion because it was not supported by the objective record or by Dr. Su's own treatment notes which indicated stability with medications and no side effects. AR 25. The ALJ also explained that the total file evidence was not consistent with Dr. Su's opinion as Hutcherson's mental status examinations revealed her mental status was generally within normative limits or revealed only mild deficits in appropriate thought processes and content, orientation, articulation, logical, relevant, perception, memory, abstract reasoning, and analogical reasoning. AR 25.

The ALJ did not err in assigning only "little weight" to Dr. Su's opinion as specifically set forth in his MSS dated January 6, 2011. The majority of the ALJ's discussion of the medical evidence of record detailed the results of relevant objective testing and observations, the relevant subjective complaints made by Hutcherson to her doctors at various times between 2007 and late 2011, and the relevant fluctuations in Hutcherson's mental state, physical health, and personal choices regarding the use of tobacco, marijuana, and alcohol. The ALJ also exhaustively discussed the various medications Hutcherson was prescribed by Dr. Su and other doctors to treat her mental and physical ailments. The ALJ's observation that Hutcherson experienced stability with medications and no side effects does not amount to reversible error. As for side effects, the ALJ considered the medical records to which Hutcherson cites in her brief where she complained about side effects. Further, Hutcherson does not argue or point to any evidence to show that those side effects were anything more than *de minimis* and so not such as to prevent Hutcherson from continuing to be treated for her mental health condition. Indeed, the medical evidence the ALJ considered reveals that Hutcherson remained on medications at all times and continued to seek further treatment even when she had adverse side effects on rare occasion.

As for the ALJ's finding that Dr. Su's opinion was entitled to little weight, in part, because Dr. Su's own treatment notes indicated Hutcherson's "stability" with medications, the ALJ committed no error. Notably, Hutcherson herself acknowledges in her Motion for Summary Judgment that there was overall improvement two years after she began treating with Dr. Su. Also, the cases Hutcherson cites in order to counter the ALJ's emphasis upon Hutcherson's stability with medication are inapposite in this context. In *Jelinek v. Astrue*, the Seventh Circuit faulted the ALJ's repeated reference to the bipolar claimant's non-compliance with medication in the context of the ALJ's determination as to the claimant's credibility. 662 F.3d 805, 814 (7th Cir. 2011). In *Pontarelli v. Colvin*, the District Court faulted the ALJ's reliance upon the bipolar claimant's GAF scores as signs of the claimant's long-term functional abilities. 2014 WL 3056616, at *8 (N.D. Ill. July 7, 2014). In those cases, the courts faulted the ALJs for failing to consider the expected fluctuations in a claimant's mental condition caused by bipolar disorder when determining just how impacted the claimants were by bipolar disorder. In *this* case, the ALJ cited Hutcherson's evidenced stability with medications to support her determination as to the weight she gave Dr. Su's opinion; the "stability" the ALJ noted was contrary to the extent of limitations to which Dr. Su opined in his MSS. The ALJ did what was required of her under 20 CFR § 416.927.

Finally, Hutcherson highlights the fact that Dr. Su assigned her a GAF score of 50 which she argues is wholly consistent with the overall record, and thus, lends support to her argument that the ALJ gave insufficient weight to Dr. Su's opinion. The ALJ committed no error by failing to place more emphasis upon this February 2010 GAF score. The ALJ did note that score in her Decision, but she was not required to place a particular degree of emphasis upon it. In fact, "nowhere do the Social Security regulations or case law require an ALJ to

11

determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), *quoting Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003). The ALJ sufficiently addressed the medical evidence of record to build a logical bridge from that evidence to her conclusion that Dr. Su's opinion was entitled to "little weight." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**2**

With regard to the weight the ALJ gave the State Agency consultants' opinions, Hutcherson argues that it was erroneous for the ALJ to fail to assign the weight she gave those opinions and those opinions were made without medical evidence material to her disability such as her episode of decompensation in August 2011.

In her Decision, the ALJ discussed Dr. Fyans's MRFCA dated June 28, 2010 which the ALJ found to be consistent with the objective record when viewed as a whole. AR 26. Though the ALJ did not explicitly say how much weight she gave Dr. Fyans's opinion, it is clear she gave it enough weight as to include the restrictions to which Dr. Fyans opined in the RFC. Dr. Fyans opined that Hutcherson's mood disorder "suggest[ed] a socially restricted setting with a moderate limit of social expectations. Client retains psychological capability to do one and two step unskilled tasks at sga." AR 579. The RFC limited Hutcherson to unskilled work involving no production pace demands and work involving only occasional interaction with co-workers, supervisors, and the general public. AR 21. Hutcherson cites "clinical signs" within the record that she says were contradictory evidence of disability. However, her representation of what the cited records show is somewhat inaccurate. Those cited records, at

times, indicated *no* psychomotor retardation or agitation, normal speech, calm and bright affect, fair eye contact, and a pleasant and cooperative demeanor.[5]

Thus, the ALJ did not commit reversible error by failing to explicitly state how much weight she gave to the State Agency opinions where she incorporated limitations in the RFC to which were opined in June 2010 and affirmed by Dr. Heinrich in September 2010; in other words, the Court can trace the path of the ALJ's reasoning from her discussion of the medical opinions of record and the weight she assigned each to the RFC she ultimately formulated. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). Hutcherson does not explain how *one* later episode of decompensation in August 2011, which the ALJ in fact addressed in her Decision, makes erroneous the weight given to the 2010 State Agency opinions which she explained were consistent with the objective record when viewed as a *whole*. The ALJ addressed the record evidence as a whole in her Decision, and so the Court finds that substantial evidence supports the weight the ALJ gave the State Agency opinions; the ALJ did not give Dr. Su's opinion less weight based upon the mere fact that the State Agency opinions were contradictory to his. *See Gudgel v. Barnhart*, 345 F.3d 467, 471 (7th Cir. 2003).

**B**

Hutcherson argues that while the ALJ gave several reasons for finding her statements concerning intensity, persistence, and limiting effects not credible, the

---

[5] Hutcherson appears to be playing doctor by identifying her treatment records where she had a euthymic affect to support her contention that clinical signs evidenced disability. "Euthymic mood" is defined as "mood that is neither elevated nor depressed." DORLAND'S MEDICAL DICTIONARY, available at http://dorlands.com/index.jsp. While neither Hutcherson, the ALJ, nor the Court are permitted to play doctor, the Court notes the definition of euthymic fails to suggest it was a clinical sign that was evidence of disability (as Hutcherson argues).

ALJ failed to properly consider the factors listed in SSR 96-7p and 20 C.F.R. § 404.1529(c)(3) and the case law of this Circuit. In particular, Hutcherson argues that the ALJ, in making her credibility finding, overly relied upon the conclusion that Hutcherson had a good response to various treatments and did not sufficiently consider the numerous obstacles that impeded Hutcherson's ability to obtain regular care. Toward the end of her Decision, the ALJ explained:

> As discussed above, the medical evidence, laboratory findings and the claimant's reported activities during the years in question indicate that her functioning is considerably greater than she alleges.

AR 28.

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). A credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Here, the ALJ abided by SSR 96-7p and § 404.1529(c)(3) and the case law of this Circuit where she addressed the relevant testimony; the gamut of medical

records regarding Hutcherson's mental health, physical health, objective testing, prescribed medications, and her compliance with taking prescribed medications; medical opinions from treating and consultative State Agency sources; Hutcherson's work history; and Hutcherson's daily activities. Specifically, the ALJ's finding that Hutcherson had a good response to various treatments is supported by substantial evidence. The ALJ recited throughout her Decision where treating doctors indicated the medications they prescribed Hutcherson, Hutcherson's reports of how she was doing on medication, and when she did not take her medication as directed. The ALJ also recited both the times when Hutcherson reported improvement and when she reported problems. Accordingly, the ALJ did not disregard the fact that the medical records reveal ongoing dosage and medication changes under Dr. Su's care for Hutcherson to achieve good relief from her psychological symptoms. Though Hutcherson again raises the point that a bipolar individual's episodes are expected to fluctuate even under proper treatment, Hutcherson does not sufficiently explain how that fact makes the ALJ's credibility determination wrong where the ALJ *did* note Hutcherson's fluctuations. Having a "good response to various treatments" and experiencing fluctuations are not mutually exclusive.

Similarly, Hutcherson does not sufficiently explain how the ALJ's consideration of the record evidence regarding her migraine headaches makes erroneous the ALJ's credibility finding that Hutcherson had good response to treatments. The ALJ noted in her Decision the times when Hutcherson experienced headaches, the MRI testing of her brain she had done, the results of the MRI testing of her brain, and the medications given to her to treat her headaches. Hutcherson acknowledges in her opening brief that she testified that she finally obtained relief after taking Gabapentin. Plf's MSJ (Doc. 20 at pg. 19). During the hearing, Hutcherson testified that her migraines "greatly improved"

15

since her doctor put her on medicine. AR 52. The ALJ found that while Hutcherson had a history of chronic headaches, "the record reflects these have been very responsive to treatment." AR 28. The ALJ succinctly stated her reason for not considering Hutcherson's migraine headaches to have such limiting effects as to factor them into the RFC or to discuss any such limiting effects beyond the extent she did. The Commissioner also persuasively emphasizes the fact that Hutcherson does not cite to any objective medical evidence or medical source opinion evidence that suggested additional work-related limitations caused by Hutcherson's migraine headaches. In the end, the Court can easily trace the ALJ's path of reasoning in this regard and moreover, the conclusion she reached is amply supported by the record evidence.

Hutcherson's argument that the ALJ failed to consider the "numerous obstacles" that impeded her ability to obtain regular care fares no better. The ALJ *did* note where Hutcherson made her financial problems known to treating sources and *did* note that Hutcherson had run out of medications in August 2011 due to lack of a medical card. By arguing that the ALJ's credibility determination was incorrect, in part, because the ALJ failed to consider financial obstacles, Hutcherson attempts a *post hoc* rationalization for why the intensity, persistence, and the limiting effects of her symptoms were more credible than the ALJ determined. Substantial evidence indicates that Hutcherson continued to receive medication and treatment throughout the entire period under review; there was not a time when Hutcherson went without treatment.

## C

Finally, Hutcherson argues that the ALJ erred by failing to consider and give weight to her boyfriend Richard Tracey's Third Party Function Report. She argues that the ALJ failed to develop the facts and arguments regarding her non-exertional limitations as supported by this overlooked opinion evidence, and

16

Tracey's opinion would have an effect on the outcome of the case because it was consistent with her allegations and Dr. Su's MSS.

For the reasons that the Commissioner lists in her Motion for Summary Affirmance, the ALJ committed no error by failing to specifically discuss Tracey's Third Party Function Report. First, an ALJ is not required to discuss every piece of evidence as long as she provides some glimpse into her reasoning. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Second, Hutcherson testified at the hearing about her bipolar disorder, poor concentration, anxiety, fatigue, and other symptoms which the ALJ then discussed in her Decision and which are strikingly similar to Tracey's observations of Hutcherson's condition. Lastly, Tracey's Report is dated April 11, 2010, which was more than two years before the ALJ issued her Decision. Hutcherson simply does not convincingly show how Tracey's opinion would have an effect on the outcome of the case where the ALJ considered substantially similar evidence via Hutcherson's own testimony, correctly weighed Dr. Su's opinion to be entitled to only "little weight" (as detailed above), and otherwise correctly and satisfactorily considered the record evidence (as detailed above). In other words, any error that the ALJ committed in failing to specifically discuss Tracey's Report is harmless, as the ALJ's Decision on the whole is supported by substantial evidence and the record evidence was assessed correctly under the relevant regulations and authority. *Delgado*, 782 F.2d at 82; *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (the Commissioner's findings will be reversed only if not supported by substantial evidence or if the Commissioner applied an erroneous legal standard).

## V

For the reasons stated herein, Hutcherson's Motion for Summary Judgment (Doc. 19) is DENIED and the Commissioner's Motion for Summary Affirmance (Doc. 25) is GRANTED. This matter is now terminated.

*It is so ordered.*

Entered on February 26, 2016.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE